62096. GRIFFIN v. WALKER COUNTY DEPARTMENT OF FAMILY & CHILDREN SERVICES.

QUILLIAN, Chief Judge.

This is a father's appeal from the termination of his parental rights to his son.

Appellant married a woman (hereinafter mother) who had two children by two other men. In November 1976 she gave birth to appellant's son. The couple continued to live together with the three children until October 1978 when the mother entered a mental hospital. At that time appellant and his son went to live with appellant's parents and the two older children with some of appellant's other relatives. After about three weeks the mother was released from the hospital but did not return to live with appellant and the children. Appellee DFCS had started an investigation of the mother and as a result in November 1978 the mother voluntarily gave temporary custody of her two older children to DFCS for foster care. Appellant's son continued to live with appellant and his parents or grandparents, who were neighbors. In January 1979, at the mother's request to keep the three children together, appellant also gave temporary custody of his son to DFCS. In June 1979 appellant and the mother were divorced, with custody of appellant's son given to the mother. Appellant was ordered to pay $20 per week for the support of his son. The mother immediately remarried but made no effort to regain custody of her children and consented that appellant's son remain in the temporary custody of DFCS. In July 1980 DFCS petitioned for the termination of the parental rights of the mother to all three of her children and of the respective three fathers to each of their children. After a hearing at which only the mother and appellant appeared the trial court terminated the mother's parental rights to all of her children and of each father to his respective child. Appellant makes his appeal solely on the general grounds. *Held:*

The great majority of the evidence at the hearing was about the mother's unfitness and her conduct which caused her children to be neglected and deprived and was ample to terminate her rights as a parent.

As to appellant the evidence showed that he had the custody of his son up through early January 1979 when he released temporary custody to DFCS so that the boy could be with the other two children of the mother. Permanent custody of appellant's son was awarded to the mother as a result of the divorce in June 1979 and the mother continued his custody with DFCS. After giving custody to DFCS in January appellant visited his son once in 1979 and several times in 1980. He commenced paying weekly support for him in August 1979 but was unable to continue because of unemployment, making total payments of $105 by January 1980.

There was no evidence that appellant was unable to care for or provide a proper home for his son. A home evaluation and other evidence showed that appellant's parents' home and his neighboring grandparents' home were available and suitable for the housing and care of the child. The mother testified that appellant could properly care for his son and that the only reason appellant gave temporary custody to DFCS was at her request to keep her children together. Appellant testified of his desire to keep his son, that he was employed, and, with his parents' and grandparents' help, of his financial and suitable home environment to do so. Appellant's father corroborated his testimony concerning his capacity to care for his son and the proper surroundings in which to raise the child.

This court "has upheld the termination of parental rights only in the face of evidence showing either gross misconduct or some physical or mental disability which would have authorized a finding that the parent was unfit. [Cits.]

" . . . '[I]t is not proper to consider the question of termination of parental rights based solely upon a "welfare of the child" test, without some required showing of parental unfitness, caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child, or by what is tantamount to physical or mental incapability to care for the child.' [Cit.] Based on a review of all the past authorities interpreting Code Ann. § 24A-3201 (a) (2), we reaffirm that this is the proper standard for review." *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338 (1), 339, 340 (274 SE2d 728).

This court has reversed termination of parental rights in several other cases in which the facts were more egregious than in the instant case. See e.g. *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338, supra; *Patty v. Dept. of Human Resources,* 154 Ga. App. 455 (269 SE2d 30); and *Collins v. Martin,* 154 Ga. App. 250 (267 SE2d 858).

There is little evidence that appellant engaged in any misconduct detrimental to his son. There is no evidence that he is mentally or physically incapable of caring for his son. At the time of

the hearing he was employed and had suitable living arrangements and extended family support for the care of the child. We find that there are insufficient "compelling facts to establish the necessary lack of 'proper parental care or control' . . ." *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306).

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED JUNE 24, 1981.

*Jon Bolling Wood,* for appellant.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs II, Executive Assistant Attorney General, Joseph Dana, Deputy Assistant Attorney General, Carol Atha Cosgrove, Assistant Attorney General,* for appellee.